UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
―――――――――――――――――――――――――――

RAQUEL CARBONELL,

**REPORT AND**
**RECOMMENDATION**

                    Plaintiff,

08-CV-661
(GLS/VEB)

          V.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

                    Defendant.

―――――――――――――――――――――――――――

## I. INTRODUCTION

In August of 2001, Plaintiff Raquel Carbonell filed an application for Supplemental Security Income ("SSI") benefits under the Social Security Act.  Plaintiff alleges that she has been unable to work since January 1, 1997, due to chronic asthma.   The Commissioner of Social Security denied Plaintiff's application.

Plaintiff, through her attorney, Stephen J. Mastaitis, Jr., Esq., commenced this action on June 23, 2008, by filing a Complaint in the United States District Court for the Northern District of New York. (Docket No. 1).  Plaintiff seeks judicial review of the Commissioner's denial of benefits pursuant to 42 U.S.C. §§ 405 (g) and 1383 (c)(3).

On February 8, 2010, the Honorable Norman A. Mordue, Chief United States District Judge, referred this case to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(A) and (B). (Docket No. 18).

## II. BACKGROUND

The relevant procedural history may be summarized as follows:  Plaintiff applied for

SSI on August 17, 2001,[1] alleging disability beginning on January 1, 1997. (T at 14,134-36, 166).[2]   The application was denied initially and on reconsideration. (T at 14, 33-36). Plaintiff requested a hearing before an Administrative Law Judge ("ALJ") on October 17, 2003.  (T at 92).   A hearing was held in Albany, New York on April 8, 2003 and July 24, 2003, before ALJ Thomas P. Zolezzi.  (T at 588-666).  Plaintiff, represented by counsel, appeared and testified.  (T at 588).  On August 21, 2003,  ALJ Zolezzi issued a decision denying the application for benefits.  (T at 78-89).  Plaintiff filed a request for review of that decision.   On January 20, 2006, the Appeals Council vacated ALJ Zolezzi's decision and remanded the case for further proceedings.  (T at 110-13).

Thereafter, Plaintiff appeared and testified at a hearing held on August 22, 2006, in Albany, New York before ALJ Zolezzi.  (T at 544). On September 18, 2006, ALJ Zolezzi issued a decision finding Plaintiff not disabled.  (T at 14-22).  Plaintiff requested review of that decision.  The ALJ's decision became the Commissioner's final decision on April 25, 2008, when the Appeals Council denied Plaintiff's request.  (T at 5-7).

Plaintiff, through counsel, timely commenced this action on June 23, 2008. (Docket No. 1).  The Commissioner interposed an Answer on October 3, 2008.  (Docket No. 8). Plaintiff filed a supporting Brief on January 5, 2009. (Docket No. 12).  The Commissioner filed a Brief in opposition on May 21, 2009. (Docket No. 17).

Pursuant to General Order No. 18, issued by the Chief District Judge of the Northern District of New York on September 12, 2003, this Court will proceed as if both parties had

---

[1]Although the ALJ's decision and Defendant's brief lists August 6, 2001, as Plaintiff's application date, a review of the application shows that it is dated August 17, 2001, as asserted by Plaintiff.

[2]Citations to "T" refer to the Administrative Transcript.  (Docket No. 7).

accompanied their briefs with a motion for judgment on the pleadings.[3]

For the reasons that follow, it is respectfully recommended that the Commissioner's motion be denied, Plaintiff's motion be granted, and that this case be remanded for further proceedings.

### III. DISCUSSION

**A.    Legal Standard**

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir.1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir.1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); see Grey v. Heckler, 721 F.2d 41, 46 (2d Cir.1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir.1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford

---

[3]General Order No. 18 provides, in pertinent part, that "[t]he Magistrate Judge will treat the proceeding as if both parties had accompanied their briefs with a motion for judgment on the pleadings."

v. Schweiker, 685 F.2d 60, 62 (2d Cir.1982).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F.Supp. 147, 153 (S.D.N.Y.1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir.1984).

The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled as defined under the Social Security Act. See 20 C.F.R. §§ 416.920, 404.1520. The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.[4]

_____

[4]This five-step process is detailed as follows:

First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.

If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.

If the claimant has such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.

If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.

Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite

While the claimant has the burden of proof as to the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n. 5; Ferraris v. Heckler, 728 F.2d 582 (2d Cir.1984).

The final step of the inquiry is, in turn, divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his or her physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. §§ 416.920(g); 404.1520(g); Heckler v. Campbell, 461 U.S. 458, 460, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983).

**B.    Analysis**

**1.    Commissioner's Decision**

In his decision issued on remand, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged onset of disability, January 1, 1997. (T at 16). The ALJ determined that Plaintiff had the following impairments considered "severe" under the Act: asthma, history of bilateral bunion surgery, hypothyroidism, hypertension and hypercholesterolemia, depression and anxiety. (T at 16).

However, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments found in 20 CFR

---

the claimant's severe impairment, he has the residual functional capacity to perform his past work.

Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir.1982) (per curiam); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir.1999); 20 C.F.R. §§ 416.920, 404.1520.

Part 404, Subpart P, Appendix 1 (the "Listings"). (T at 17).

The ALJ found that Plaintiff has the residual functional capacity ("RFC") to occasionally  lift and carry 20 pounds, sit for 4 hours in an 8-hour work day, stand or walk for 2 hours in an 8-hour work day, with the ability to change position from sitting to standing every 30 to 45 minutes, "in simple entry level work, with simple decision-making, but no complex decision making; in a low stress environment, with no planning, scheduling, report-writing, supervising or multi-tasking; with only moderate exposure to gases, fumes, smoke, dust, odors, and poor ventilation; with no exposure to dangerous moving machinery; no work with knives, saws or blades; no driving for business purposes; no climbing ladders, ropes or scaffolds; and with the ability to have 3 rest-room breaks during the course of an eight-hour workday."  (T at 18).

The ALJ noted that Plaintiff has no past relevant work.  (T at 20).  The ALJ also noted that Plaintiff, born March 27, 1966, was 31 years old on the date of the application,[5] and is considered a "younger individual" as defined in 20 C.F.R. § 416.963.  (T at 20).  The ALJ found that given Plaintiff's age, education (limited), work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (T at 21).  As such, the ALJ found that Plaintiff has not been under a disability, as defined under the Act at any time relevant to the ALJ's decision. (T at 22).  As noted above, the ALJ's decision became the Commissioner's final decision on April 25, 2008, when the Appeals Council denied Plaintiff's request for review.  (T at 5-7).

---

[5]Plaintiff was actually 35 on the date of the application (August 17, 2001) and 30 on the alleged date of disability onset (January 1, 1997).  This discrepancy is not relevant as a person under the age of 45 is considered a "younger individual" under 20 C.F.R. § 416.963.

**2.** **Plaintiff's Claims**

Plaintiff contends that the Commissioner's decision should be reversed. In particular, Plaintiff challenges the ALJ's RFC determination, reliance upon the vocational expert's testimony, consideration of Plaintiff's obesity, and consideration of opinions offered by Plaintiff's treating physicians.

Residual functional capacity ("RFC") is defined as: "what an individual can still do despite his or her limitations." Melville v. Apfel, 198 F.3d 45, 52 (2d Cir.1999). "Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." Id.

When making a residual functional capacity determination, the ALJ considers a claimant's physical abilities, mental abilities, symptomatology, including pain and other limitations that could interfere with work activities on a regular and continuing basis. 20 C.F.R. § 404.1545(a). An RFC finding will be upheld when there is substantial evidence in the record to support each requirement listed in the regulations. LaPorta v. Bowen, 737 F.Supp. 180, 183 (N.D.N.Y.1990).

In this case, the ALJ determined that Plaintiff's physical RFC fell between the levels of light and sedentary work and that she had the mental/emotional capacity to perform work that exists in significant numbers in the national economy. (T at 18, 21-22). Plaintiff challenges this finding on several grounds.

**a.** **Asthma**

The ALJ determined that Plaintiff had "intermittent exacerbations of asthma fueled or triggered by allergic components with relatively long periods requiring no immunotherapy beyond routine maintenance medications." (T at 19).   This finding was supported by substantial evidence.

Dr. George Wootan, a consultative examiner, indicated that Plaintiff has "some wheezing in the upper lung fields bilaterally," but no significant chest wall abnormality, normal diaphragmatic motion, and normal inspiration and expiration. (T at 259).   He diagnosed no active chest disease. (T at 260).   Dr. Wootan performed a pulmonary function test, which showed moderate to severe obstruction, but Dr. Wootan attributed the results to "very poor" effort by Plaintiff and noted that the results were not "at all" consistent with her clinical picture. (T at 260).   Dr. Wootan concluded that Plaintiff could be involved in activities that required sitting, standing, walking, and stairs, although lifting and carrying should not be a "major part" of her work activity. (T at 261).

Dr. Noah Reiss, a treating allergist/immunologist, described Plaintiff's asthma as "moderate." (T at 469).   Pulmonary function test performed by Dr. Reiss showed mild to moderate obstruction. (T at 469, 472).   Dr. Reiss also noted that Plaintiff was non-compliant with medications. (T at 468).   A clinical note from January 2003 indicated that Plaintiff had recently been treated in the emergency room for "coughing and mild chest tightness, but no severe wheezing." (T at 471).

Dr. Phillip Gilly, a consultative examiner, noted no significant chest wall abnormality, lungs "[c]lear to auscultation," and normal diaphragmatic motion. (T at 500).   The only limitations noted by Dr. Gilly were that Plaintiff should avoid exposure to smoke, dust, and other known respiratory irritants. (T at 501).

Dr. Glenn Pizarro was Plaintiff's primary care physician between 2001 and 2006. His clinical notes frequently indicated that Plaintiff's lungs were clear and/or that she denied shortness of breath and other respiratory complaints. (T at 347, 350, 358, 360-61, 454-55, 522, 527).

The ALJ determined that Plaintiff's asthma was moderate in degree and that, while she had certain work-related limitations (*e.g.* only moderate exposure to gases, fumes, smoke, dust, odors, and poor ventilation), she retained the RFC to perform work that exists in significant numbers in the national economy. (T at 18).  The evidence outlined above constitutes substantial evidence in support of this assessment.

### b.    Depression & Side Effects

When evaluating the severity of mental impairments, the regulations require the ALJ to apply a "special technique" at the second and third steps of the review, in addition to the customary sequential analysis. Kohler v. Astrue, 546 F.3d 260, 265-66 (2d Cir.2008) (citing 20 C.F.R. § 404.1520a).

The technique first requires a determination of whether the claimant has a medically determinable mental impairment. 20 C.F.R. § 404.1520a(b)(1). Then, the ALJ must rate the degree of claimant's functional limitation resulting from the impairment in four areas: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation. See 20 C.F.R. § 404.1520a(c)(3).

These areas are rated on a scale of "none, mild, moderate, marked, and extreme." 20 C.F.R. §§ 404.1520a(c)(4); 416 .920a(c)(4).  A mental impairment is generally found not severe if the degree of limitation in the first three areas is mild or better and there are no episodes of decompensation. § 404.1520a(d)(1). The ALJ must document "a specific

finding as to the degree of limitation in each of the functional areas." 20 C.F.R. § 404.1520a(e)(2).   At the third step of the review, the ALJ must consider whether the claimant's mental impairments meet or medically equal one of the listed impairments.

In this case, the ALJ found that Plaintiff's mental impairment did not meet or medically equal the impairment listed in §12.04 of the Listings (Affective Disorders). (T at 17).  This conclusion was supported by substantial evidence.

To establish that her impairments meet or equal § 12.04, Plaintiff must first satisfy one of the threshold criteria set forth in Subsection "A" of the impairment description.  This typically involves proof of a medically determined mental impairment, combined with evidence of some definite limitation caused by that impairment.

If Plaintiff falls within the threshold parameters of Subsection "A", the inquiry turns to Subsection "B" of § 12.04 to determine whether her "mental impairments result in at least two of the following: (1) marked restrictions in activities of daily living; (2) marked restrictions in social functioning; (3) marked restrictions in maintaining concentration, persistence, or pace; (4) repeated episodes of decompensation, each of extended duration." Paratore v. Comm'r of Social Security Admin., No. 05-CV-1356, 2008 WL 541156, at *5 (N.D.N.Y. Feb. 25, 2008).

In this case, the ALJ found that Plaintiff did suffer from mentally determinable mental impairments (depression and anxiety).  The ALJ further determined that those impairments, in combination with Plaintiff's other impairments, were considered "severe" under the Act.  Thus, the "A" criteria of § 12.04 have been met and the key inquiry is whether Plaintiff

meets the "B" criteria.[6] Plaintiff will only be disabled if her impairment results in marked restrictions in at least two of the specified areas, sufficient to preclude her from performing basic work activities.  See Armstrong v. Comm 'r of Social Sec., No. 05-CV-1285, 2008 WL 2224943, at * 12 (N.D.N.Y. May 27, 2008) (holding that even if the ALJ had determined that the plaintiff's depression was a medically determinable impairment, substantial evidence must exist to support a conclusion that the condition was severe and precluded the plaintiff from doing basic work activities).

The ALJ found that Plaintiff had mild limitations with regard to activities of daily living; moderate to marked limitation in terms of social functioning; moderate difficulties maintaining concentration, persistence, or pace; and no episodes of deterioration or decompensation of extended duration. (T at 18).

The ALJ's assessment was supported by the findings of Dr. Annette Payne, a consultative psychiatric examiner.  Dr. Payne noted that Plaintiff's social skills were "fair" and found her attention and concentration to be "mildly impaired." (T at 492).  Recent and remote memory skills were likewise "mildly impaired" and cognitive functioning was "in the average range." (T at 492).  Insight and judgment were noted to be "fair." (T at 492).  Dr. Payne assessed that Plaintiff can follow and understand simple directions and instructions and perform simple tasks. (T at 493).  Overall, Dr. Payne found Plaintiff's psychiatric issues

---

[6]Under subsection "C" of §12.04, a claimant would automatically meet the Listing if there was documented evidence of any of the following: "(1) Repeated episodes of decompensation, each of extended duration; or (2) A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or (3) Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement." § 12.04 (C).  However, Plaintiff does not assert that any of these factors are present and the medical record does not suggest that any of the "C" criteria are satisfied.  As such, subsection "C" of § 12.04 is not at issue.

"moderately limiting," noting that she would have difficulties learning new tasks, performing complex tasks, making appropriate decisions, relating with others, and dealing with stress. (T at 493).

Dr. Payne completed a Medical Source Statement of Ability to Do Work-Related Activities (Mental) form, in which she opined that Plaintiff was moderately limited in terms of her ability to remember and carry out short, simple instructions; and markedly limited with regard to her ability to understand, remember, and carry out detailed instructions, and make judgments on simple work-related decisions. (T at 495).

Clinical notes from Peeyush Mittal, a treating psychiatrist, consistently indicated that Plaintiff was "alert, well-oriented to time, place and person" and demonstrated "fair judgment and insight." (T at 441, 443). Dr. Mittal's records also showed improvement in Plaintiff's condition. Dr. Mittal consistently characterized Plaintiff's depression as mild. (T at 444, 446, 449, 452). In March of 2004, he opined that Plaintiff was "in reasonable remission from depression overall" and described her mood as "good." (T at 445). When presented with a Department of Social Services form provided by Plaintiff, Dr. Mittal certified that she was unable to work because he wanted to give Plaintiff "a six month period to recuperate." (T at 447). A June 2004 report described Plaintiff as "cheerful" and her mood was noted to be in "good control." (T at 448).

Plaintiff began treating with Dr. Venkateshwar Vemuganti in April 2005. Plaintiff argues that Dr. Vemuganti's notes "indicate a severely depressed individual." This is not the case and, in fact, Dr. Vemuganti's clinical notes are largely supportive of the ALJ's assessment. Although Dr. Vemuganti noted Plaintiff's subjective complaints of depression, anxiety, sleep problems, and obsessive thoughts and feelings, he consistently described

12

Plaintiff as cooperative, alert, and oriented. (T at 514, 515, 516, 518).  Her mood was noted to be "somewhat anxious," with good concentration. (T at 516).  In September of 2005, Plaintiff was described as "somewhat anxious and depressed" after learning that her grandmother had passed away. (T at 514).

Plaintiff's suggestion that side effects from her medications produced disabling impairments is unsupported by the record.  Although difficulties with side effects were noted at various times, Plaintiff does not point to any assessment by a medical provider indicating that those difficulties were disabling, either individually or in combination with Plaintiff's other impairments.

In sum, substantial evidence in the record supports the ALJ's conclusion that Plaintiff had mild limitations with regard to activities of daily living; moderate to marked limitation in terms of social functioning; and moderate difficulties maintaining concentration, persistence, or pace; and, thus, did not satisfy the "B" criteria of §12.04 of the Listings.  Likewise, the ALJ's RFC determination, in which he found that Plaintiff could perform simple entry level work, with simple decision-making (but no complex decision-making), in a low-stress environment, with no planning, scheduling, report-writing, supervising or multi-tasking, was supported by substantial evidence.

### c.    Nebulizer Use

Plaintiff contends that her nebulizer use and medication needs severely erode her occupational base for sedentary work.  In support of this claim, she relies on an exchange between her counsel and the vocational expert.  Counsel asked whether Plaintiff would be able to use her neublizer at the jobs identified by the vocational expert. (T at 578).  The vocational expert responded that while using the nebulizer in public would probably be

unacceptable, using the device during general rest periods "would probably not interfere with the performance of the primary responsibilities of the job." (T at 579). Plaintiff testified that she uses the nebulizer approximately once every four hours. (T at 549). The vocational expert referenced this testimony and opined that such usage would be permissible in an 8-hour work day. (T at 579). Thus, this Court finds no reversible error with regard to the ALJ's failure to find that Plaintiff's nebulizer use severely eroded her occupational base.

### d       Ability to Speak English

Plaintiff also asserts that her difficulties with the English language erode her occupational base. The ALJ concluded that Plaintiff is able to communicate in English. See 20 C.F.R. § 416.964 (5). This conclusion was supported by substantial evidence and Plaintiff has not demonstrated that the ALJ committed any reversible error in this regard. Plaintiff testified at the administrative hearing without the benefit of an interpreter and explained that she could speak and understand English provided the ALJ spoke slowly. (T at 546). Notes from her treating psychiatrist described Plaintiff as "very fluent" in English and able to express her feelings "fairly well" in that language. (T at 516).

### e.      Ability to Sit/Stand/Walk

The ALJ concluded that Plaintiff retained the RFC to sit for 4 hours in an 8-hour workday and stand/walk for 2 hours each in an 8-hour workday. (T at 18). These findings are consistent with the March 2005 physical capacities evaluation by Plaintiff's treating physician, Dr. Pizzaro. (T at 424). Indeed, the ALJ indicated that he was affording "greatest" weight to Dr. Pizzaro's assessment (T at 20). Given Dr. Pizzaro's status as a

treating physician, this was appropriate.[7]

The ALJ then determined that Plaintiff's physical RFC fell between the levels of light and sedentary work.  (T at 21).  Presumably, the ALJ meant to imply that Plaintiff was able to perform the full range of sedentary work and some, but not all, aspects of light work. However, the ALJ's findings concerning Plaintiff's ability to sit is not consistent with an ability to perform the full range of sedentary work.

Sedentary work "is defined as involving only occasional standing and walking, the lifting of no more than ten pounds at a time, and the occasional lifting and carrying of light objects." Schaal v. Apfel, 134 F.3d 496, 501 n. 6 (2d Cir. 1998); see also 20 C.F.R. § 404.1567. "Sedentary work also generally involves up to two hours of standing or walking and six hours of sitting in an eight-hour workday." Perez v. Chater, 77 F.3d 41, 46 (2d Cir.1996) ("Sedentary work also generally involves up to two hours of standing or walking and six hours of sitting in an eight-hour workday").

Under this standard, if Plaintiff could not sit for six hours in an eight-hour workday, her ability to perform a full range of sedentary work would have been eroded.  As noted above, her treating physician opined that she could sit for only 4 hours, a finding the ALJ adopted.  Likewise, "light work" requires "standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday." 20 C.F.R. § 404.1567 (b); SSR 83-10. "Sitting may occur intermittently during the remaining time." Id. These requirements are not consistent with the ALJ's RFC determination.  Dr. Balagtas, the consultative examiner,

---

[7]Under the "treating physician's rule," the ALJ must give controlling weight to the treating physician's opinion when the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 404.1527(d)(2); Halloran v. Barnhart, 362 F.3d 28, 31-32 (2d Cir. 2004); Shaw v. Chater, 221 F.3d 126, 134 (2d Cir.2000).

opined that Plaintiff had "slight-to-moderate limitations in activities that require prolonged standing and walking," but made no findings with regard to her ability to sit for extended periods.  (T at 508).  Although the non-examining State Agency analyst concluded that Plaintiff could sit for about six (6) hours in an eight (8) work day (T at 269), this finding was not supported by any citation to the medical records and is directly contradicted by the assessment of Plaintiff's treating physician and, indeed, by the ALJ's own assessment. As such, it cannot be considered substantial evidence sufficient to support the ALJ's determination that Plaintiff's RFC fell between the levels of light and sedentary work.

The ALJ did not provide an explanation as to how he reconciled his determination with regard to Plaintiff's ability to sit with his assessment of Plaintiff's ability to perform the full range of sedentary work.  A remand is therefore required for further development of this issue.  In addition, the ALJ should consider the issues referenced below concerning Plaintiff's obesity and, also, whether Plaintiff's impairments are disabling when considered in combination.

### f.    Obesity

Obesity was formerly an impairment set forth in the Listings.  However, it was removed from the Listings effective October 25, 1999. See Revised Medical Criteria for Determination of Disability, Endocrine System and Related Criteria, 64 Fed.Reg. 46122 (Aug. 24, 1999).  Plaintiff contends that the obesity listing should apply to her claim because her alleged onset date of January 1, 1997, pre-dates the effective date of regulatory change.  However, because this claim was filed August 17, 2001, the new regulations apply.  See SSR 00-3p, 65 Fed.Reg. 31039, 31041 (May 15, 2000) (stating that regulations "apply to claims that were filed before October 25, 1999, and that were awaiting

16

an initial determination or that were pending appeal at any level of the administrative review process or that had been appealed to court.").

Nevertheless, the new regulations still provide for the consideration of obesity. Although "[o]besity is not in and of itself a disability; . . . [it] may be considered severe-and thus medically equal to a listed disability-if alone or in combination with another medically determinable ... impairment(s), it significantly limits an individual's physical or mental ability to do basic work activities." Cruz v. Barnhart, No. 04-CV-9011 (GWG), 2006 WL 1228581, at *10 (S.D.N.Y. May 8, 2006); see also SSR 02-1p; 20 C.F.R. Pt. 404, Subpt. P, App. 1, 1.00(Q) (instructing adjudicators to assess carefully the combined effects of obesity and musculoskeletal ailments during Steps 2 and 4 because "[o]besity is a medically determinable impairment that is often associated with disturbance of the musculoskeletal system ... The combined effects of obesity with musculoskeletal impairments can be greater than the effect of each ... considered separately.").

In this case, although the Plaintiff did not claim obesity as an impairment in her application for benefits, the record clearly indicates that Plaintiff is obese. (T at 352). Although the ALJ mentioned Plaintiff's weight, which was noted to be 205 pounds (T at 18), the decision does not indicate whether Plaintiff's obesity caused any physical or mental limitations and the ALJ did not discuss the combined effect of obesity with Plaintiff's other impairments.

The Social Security Administration has said that the ALJ is obligated to "explain how [he] reached [his] conclusions on whether obesity caused any physical or mental limitations." S.S.R. 02-1 p, 2000 WL 628049, at *7. Despite this language, some district courts, following the Seventh Circuit, have declined to remand when an ALJ fails to

explicitly address obesity, reasoning that obesity is indirectly considered if the ALJ adopts limitations suggested by examining doctors. See, e.g., Guadalupe v. Barnhart, No. 04-CV-7644, 2005 WL 2033380, at *6 (S.D.N.Y. Aug. 24,2005) (citing Skarbek v. Barnhart, 390 F.3d 500, 504 (7th Cir.2004)) (reasoning that the ALJ "relied on" medical evidence that made no mention that Plaintiff was obese even though it must have been apparent at the time of the assessment and thus the ALJ "sufficiently, if somewhat indirectly, accounted for Plaintiff's obesity"); Martin v. Astrue, No. 5:05-CV-72, 2008 WL 4186339, *3-4, 11-12 (N.D.N.Y. Sept. 9, 2008) (finding ALJ's failure to explicitly address Plaintiff's obesity harmless error, because the ALJ "utilized" the physical limitations from various doctors who considered Plaintiff's obesity).

Other courts have demanded that an ALJ clearly indicate he or she considered obesity when assessing a claimant's limitations. See, e.g., Hogan v. Astrue, 491 F.Supp.2d 347, 355 (W.D.N.Y.2007) (finding error even though the ALJ found Plaintiff's obesity a severe impairment, because it was "unclear whether he considered plaintiff's obesity at steps four and five of the disability evaluation"); cf. Fox v. Astrue, No. 6:05-CV-1599, 2008 WL 828078, at *11 (N.D.N.Y. Mar.26, 2008) (finding that the ALJ sufficiently considered obesity where he discussed it in an "entire paragraph"); Cruz v. Barnhart, No. 04-CV-9011, 2006 WL 1228581, at *9-10 (S.D.N.Y. May 8, 2006) (reasoning that the ALJ sufficiently considered the Plaintiff's obesity when he mentioned obesity in his factual findings).

Because Dr. Pizzaro was aware of Plaintiff's obesity and the ALJ adopted many of Dr. Pizzaro's findings, it is possible that, under the Seventh Circuit's approach, the ALJ indirectly considered Plaintiff's obesity in determining her functional limitations. However, on remand, the Court suggests that the ALJ clearly articulate the limiting effect, if any, of

Plaintiff's obesity, either alone or in combination with other impairments, on her RFC.

### g.    Vocational Expert

This Court also finds that further consideration is required concerning the hypotheticals presented to the vocational expert ("VE").  A hypothetical given to the VE is appropriate and may be relied upon by the ALJ if the hypothetical fully encompasses the claimant's limitations. Magee v. Astrue, No. 5:05-CV-413, 2008 WL 4186336, at *20 (N.D.N.Y. Sept. 9, 2008) (citing Varley v. Sec'y of Health & Human Servs., 820 F.2d 777, 799 (6th Cir.1987)). "If the factors set forth in the hypothetical are supported by substantial evidence, then the vocational expert's testimony may be relied upon by the ALJ in support of a finding of no disability." Id.

In the first hypothetical, the ALJ asked the VE to assume that Plaintiff could perform light work, with some non-exertional limitations. (T at 570).  In a subsequent hypothetical, the ALJ asked the VE to assume Plaintiff could perform sedentary work.  (T at 573).  When describing the various occupations that a person with these limitations could perform, the VE mentioned several times the requirement that the employee stand and/or sit for prolonged periods, *i.e.* "throughout the day." (T at 571, 576).  The ALJ did not reference the limitation to sitting for only 4 hours in an 8-hour work day or standing/walking for only 2 hours in an 8-hour work day.  This was an error.  When asked to assume an ability to perform sedentary or light work, the VE almost certainly presumed a RFC greater than that found by Plaintiff's treating physician and adopted by the ALJ.  In any event, further clarification is needed as to this issue, which should be obtained on remand.

###### h.      Combination of Impairments

The ALJ is instructed to consider impairments of which a claimant has complained or the ALJ has received evidence. See 20 C.F.R. § 404.1512 ("We will consider only impairment(s) you say you have or about which we receive evidence."). The ALJ must also consider those impairments in combination. 20 C.F.R. §§ 404.1523, 416.923 ("In determining whether your physical or mental impairment or impairments are of a sufficient medical severity that such impairment or impairments could be the basis of eligibility under the law, we will consider the combined effect of all of your impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity.").

In this case, the ALJ found that Plaintiff's combination of impairments was "severe." (T at 16).   However, the ALJ's subsequent discussion of the limiting effects of the impairments essentially deals with each impairment individually and the decision does not contain an adequate assessment of the combined effects of all of Plaintiff's impairments. On remand, the ALJ should provide a specific discussion and analysis concerning this issue.

### 3.      Remand

"Sentence four of Section 405 (g) provides district courts with the authority to affirm, reverse, or modify a decision of the Commissioner 'with or without remanding the case for a rehearing.'" Butts v. Barnhart, 388 F.3d 377, 385 (2d Cir. 2002) (quoting 42 U.S.C. § 405 (g)).  Remand is "appropriate where, due to inconsistencies in the medical evidence and/or significant gaps in the record, further findings would . . . plainly help to assure the proper disposition of [a] claim." Kirkland v. Astrue, No. 06 CV 4861, 2008 WL 267429, at *8

(E.D.N.Y. Jan. 29, 2008).  Given the deficiencies in the record as outlined above, it is recommended that the case be remanded for further proceedings consistent with this Report and Recommendation.  In particular, the ALJ should explain whether the treating physician's findings with regard to Plaintiff's ability to sit, which the ALJ adopted, can be reconciled with the ALJ's conclusion that Plaintiff's physical capacity falls between light and sedentary work.  In this regard, re-examination of the VE to address the problems noted above may be necessary.  The ALJ should also discuss the limitations, if any, posed by Plaintiff's obesity, either individually or in combination with other impairments.  A more detailed discussion should also be provided as to whether Plaintiff's impairments are disabling when considered in combination.

## IV. CONCLUSION

For the foregoing reasons, it is respectfully recommended that the decision of the Commissioner be reversed, and that the case be remanded to the Commissioner pursuant to sentence four of 42 U.S.C. § 405 (g) for further administrative proceedings consistent with this Report and Recommendation.

Respectfully submitted,

Victor E. Bianchini
United States Magistrate Judge

Dated:   March 29, 2010
         Syracuse, New York

21

## V. ORDERS

Pursuant to 28 USC §636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within ten(10) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, as well as NDNY Local Rule 72.1(c).**

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME, OR TO REQUEST AN EXTENSION OF TIME TO FILE OBJECTIONS, WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT ORDER BY THE DISTRICT COURT ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.** Thomas v. Arn, 474 U.S. 140 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d. Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988); see also 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, and NDNY Local Rule 72.1(c).

Please also note that the District Court, on *de novo* review, will ordinarily refuse to consider arguments, case law and/or evidentiary material *which could have been, but were not*, presented to the Magistrate Judge in the first instance. See Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

SO ORDERED.

March 29, 2010

Victor E. Bianchini
United States Magistrate Judge